FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 25, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEFFREY E.,[1] <br>            Plaintiff, <br><br>     vs. <br><br> COMMISSIONER OF SOCIAL <br> SECURITY, <br>            Defendant. | No. 1:18-cv-03140-MKD <br><br> ORDER DENYING PLAINTIFF'S <br> MOTION FOR SUMMARY <br> JUDGMENT AND GRANTING <br> DEFENDANT'S MOTION AND <br> SUPPLEMENTAL MOTION FOR <br> SUMMARY JUDGMENT <br><br> ECF Nos. 16, 17, 21 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 16, 17, and Defendant's supplemental briefing motion, ECF No. 21. The parties consented to proceed before a magistrate judge. ECF No. 10. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

ORDER - 1

ECF No. 16, and grants Defendant's motion and supplemental motion, ECF Nos. 17 & 21.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

ORDER - 2

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

ORDER - 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§
404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other
work, analysis concludes with a finding that the claimant is disabled and is
therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.
*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to
step five, the burden shifts to the Commissioner to establish that 1) the claimant is
capable of performing other work; and 2) such work "exists in significant numbers
in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.
Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On October 23, 2014, Plaintiff applied both for Title II disability insurance
benefits and Title XVI supplemental security income benefits alleging a disability
onset date of June 8, 2014. Tr. 222-34. The applications were denied initially, Tr.
115-29, and on reconsideration, Tr. 131-41. Plaintiff appeared before an
administrative law judge (ALJ) on June 24, 2016, August 22, 2016, and January 6,
2017. Tr. 31-73. On March 29, 2017, the ALJ denied Plaintiff's claim. Tr. 14-30.

At step one of the sequential evaluation process, the ALJ found Plaintiff has
not engaged in substantial gainful activity since June 8, 2014. Tr. 19. At step two,

the ALJ found that Plaintiff has the following severe impairments: degenerative

disc disease of the lumbar spine and obesity. Tr. 19.

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment. Tr. 19. The ALJ then concluded that Plaintiff has the RFC to perform

light work with the following limitations:

> He is able to lift/carry 20 pounds occasionally and 10 pounds
> frequently. He can stand and/or walk (with normal breaks) for 6
> hours in an eight hour workday, and sit (with normal breaks) 6
> hours in an eight-hour workday. He can push/pull unlimitedly
> within those exertional limitations. He can occasionally climb
> ramps and stairs, ladders, ropes, or scaffolds. He can frequently
> balance. He can occasionally stoop. He can frequently kneel,
> crouch, and crawl.

Tr. 20.

At step four, the ALJ found Plaintiff is capable of performing past relevant

work as a food server. Tr. 24. Therefore, the ALJ concluded Plaintiff was not

under a disability, as defined in the Social Security Act, from the alleged onset date

of June 8, 2014, though the date of the decision. Tr. 25.

The Appeals Council granted review of the ALJ's decision, and on June 1,

2018, the Appeals Council adopted the ALJ's findings and conclusion in part,

agreeing that Plaintiff was not disabled but modifying the ALJ's step-four finding.

Tr. 1-8, 218-21. The Appeals Council found that Plaintiff's past relevant work was

more accurately characterized as a fountain server, rather than a food server.  Tr. 5, 219.  The Appeals Council's decision was the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ[2] properly evaluated the medical opinion evidence;

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3.  Whether the Appeals Council conducted a proper step-four analysis.

ECF No. 16 at 9.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ improperly discounted the opinions of Lee Bourdeau, M.D. and Joan Harding, M.D.  ECF No. 16 at 11-15.

---

[2] Because the Appeals Council adopted the ALJ's non-step-four findings, the Court will refer to the ALJ's findings as to the medical opinion evidence and Plaintiff's symptom claims.

ORDER - 8

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Bourdeau

In August 2014, Dr. Bourdeau performed a physical assessment and diagnosed Plaintiff with lumbar disc disease and radiculopathy. Tr. 469-73, 556-57. Dr. Bourdeau opined that Plaintiff was markedly limited in his ability to lift and carry and as a result was limited to sedentary work (limited to lifting ten pounds). Tr. 470-71. The ALJ assigned little weight to Dr. Bourdeau's opinion. Because Dr. Bourdeau's opinion was contradicted by Gordon Hale, M.D.'s opinion, which was supported by other independent evidence in the record, Tr. 109-11, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Bourdeau's opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ found that Dr. Bourdeau's opinion was not consistent with the longitudinal record because Plaintiff's pain level, range of motion, motor strength, and other symptoms improved with conventional treatment. Tr. 23. Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007);

*Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017). Here, the ALJ highlighted that Dr. Bourdeau formed his opinion when Plaintiff had just reinjured his back while chopping firewood and that subsequent aquatic and physical therapy improved Plaintiff's condition. Tr. 23 (citing Tr. 493-94, 706, 767-68). Plaintiff argues the evidence reflects that his condition did not improve, relying on the May 6, 2015 MRI, which revealed moderate degenerative changes at L5-S1 with disc space height loss and a disc bulge and also disc desiccation, disc bulge, and facet arthropathy with mild inferior foraminal narrowing at L4-5. Tr. 616. While a different interpretation of the medical evidence could be made, the ALJ's interpretation of the longitudinal record—that Plaintiff's strength, tenderness, and gait improved in time with conventional physical and aquatic therapy—is a rational interpretation supported by substantial evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (recognizing that when the evidence in the record is subject to more than one rational interpretation, the court defers to the ALJ's finding). This was a legitimate and specific reason to discount Dr. Bourdeau's opinion.

Second, the ALJ also found that Dr. Bourdeau's opinion was brief and unexplained. Tr. 23. A medical opinion may be rejected by the ALJ if it is

conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas v.*

*Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). However, if treatment notes are

consistent with the opinion, a conclusory opinion, such as a check-the-box form,

may not automatically be rejected. *Garrison v. Colvin*, 759 F.3d 995, 1014, n.17

(9th Cir. 2014); *Trevizo v. Berryhill*, 871 F.3d 664, 667 n.4 (9th Cir. 2017)

("[T]here is no authority that a 'check-the-box' form is any less reliable than any

other type of form"). Here, the ALJ found that the documented limited range of

motion in back extension and lateral flexion were insufficient to explain Dr.

Bourdeau's opinion that Plaintiff was restricted to sedentary work and lifting ten

pounds or less. Tr. 23. The ALJ's finding is a rational interpretation of Dr.

Bourdeau's examination notes, Tr. 556-67, which only revealed a limited range of

motion, but no noted strength or gait deficiencies—not the type of findings

associated with limiting Plaintiff to lifting ten pounds or less and sedentary work.

Tr. 556-57. This was a legitimate and specific reason, supported by substantial

evidence, to discount Dr. Bourdeau's opinion.

   *2. Dr. Harding*

   In 2016, Dr. Harding performed two physical assessments and diagnosed

Plaintiff with lumbago with sciatica, unspecified; hypertension; and acute

maxillary sinusitis. Tr. 747-51, 753-54. In August 2016, Dr. Harding opined that

Plaintiff's lumbar condition severely restricted his standing, walking, lifting,

carrying, handling, pushing, pulling, reaching, stooping, and crouching, and thus Plaintiff was unable to meet the demands of sedentary work.  Tr. 748-49.  In December 2016, Dr. Harding opined that Plaintiff could walk for twenty minutes and stand for one hour before needing to rest for two hours; should only occasionally twist, crouch, and climb stairs; never stoop/bend or climb ladders; would be off task 26-50 percent of the workday; and would miss four or more days per month.  Tr. 753-54.  The ALJ assigned little weight to Dr. Harding's opinions.  Tr. 23-24.  Because Dr. Harding's opinions were contradicted by Dr. Hale's opinion, which was supported by other independent evidence in the record, Tr. 109-11, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Harding's opinions.  *See Bayliss*, 427 F.3d at 1216.

First, the ALJ found that Dr. Harding's opinions were not supported by the relatively mild objective findings.  Tr. 24.  Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record as a whole.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  Here, the ALJ highlighted the imaging findings:  1) the 2014 MRI showing mild degeneration and small central protrusion of the disc without significant stenosis; and 2) the 2015 MRI revealing mild disc bulge, facet arthropathy, and ligamentum flavum thickening, without central canal stenosis, with mild inferior foraminal narrowing without

encroachment on the exiting nerve roots with minimal facet joint fluid at L4-5, and moderate degenerative changes at L5-S1, with disc space height loss and a disc bulge, which contacted the traversing S1 nerve roots, with moderate bilateral foraminal narrowing without thecal sac compression.  Tr. 389, 399, 411, 709-11. While the imaging may support another reasonable interpretation, the ALJ's finding that Dr. Harding's extreme functional limitations were not supported by the imaging that overall indicates mild to moderate lumbar conditions is a rational finding.  *See Batson*, 359 F.3d at 1198 (recognizing that when the evidence in the record is subject to more than one rational interpretation, the court defers to the ALJ's finding).  This was a legitimate and specific reason, supported by substantial evidence, to discount Dr. Harding's opinions.

Second, the ALJ found Dr. Harding's opinions inconsistent with Plaintiff's relatively benign performances at multiple appointments.  A medical opinion may be rejected if it is unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195.  Here, the ALJ relied on the following medical evidence: Tr. 394 (noting lower extremities strength, range of motion, and sensation normal; normal back range of motion with right SI joint paraspinal musculature); Tr. 517 (noting lumbar range of motion decreased in extension and flexion, tight hamstrings, and pain to palpation in lumbar spine; but no sensory deficit in either lower extremity, negative straight leg raise, and good strength in lower

extremities); Tr. 547 (recommending that Plaintiff continue physical therapy for SI

joint mobilization and lumbar stabilization; diffuse motor weakness in right lower

extremity; no sensory deficit in lower extremities; negative straight leg raise); Tr.

556 (noting pain to palpation near L-S junction but no gross external abnormality

to extremities, and normal neurologic findings); Tr. 564 (noting lower extremities

normal with normal range of motion); Tr. 619 (noting tender to percussion at

lumbar spine and difficulties walking heel to toe; but good lower extremity motor

strength and negative straight raises); Tr. 639-40, 649 (finding good range of

motion with no significant abnormalities in lower extremities, though a mild limp

and tenderness to percussion in lumbar spine). While Plaintiff frequently was

observed with lumbar pain and difficulties with a heel-toe walk or with a mild

limp, the ALJ's finding that Plaintiff's performances at multiple appointments

were more benign than Dr. Harding's extreme functional limitations is a rational

interpretation, as Plaintiff routinely had normal range of motion and strength in his

lower extremities. This was a legitimate and specific reason, supported by

substantial evidence, to discount Dr. Harding's opinions.

Third, the ALJ found that Dr. Harding offered little explanation of the

evidence she relied on in forming her opinions. Tr. 24. An ALJ may reject a

medical opinion if it is conclusory, inadequately supported, or not supported by the

record. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Here, the ALJ

ORDER - 15

highlighted that Dr. Harding's own reports failed to include the type of significant clinical and laboratory abnormalities one would expect if Plaintiff was severely limited and would be frequently off task and absent from work. Tr. 24. Instead, Dr. Harding indicated that Plaintiff's range of motion was limited in his back and that he had pain in his back and legs but Dr. Harding otherwise failed to provide any explanation for the offered extreme limitations. Tr. 750, 754. The ALJ's finding that Dr. Harding's opinions were conclusory and unsupported by her report is a rational interpretation of the record. This was a legitimate and specific reason, supported by substantial evidence, to discount Dr. Harding's opinions.

Fourth, the ALJ found Dr. Harding's opinions inconsistent with Plaintiff's routine and conservative treatment history. The ALJ may discount a physician's opinion that is inconsistent with the conservative nature of the claimant's treatment. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Garrison*, 759 F.3d at 1015. Any evaluation of the aggressiveness of a treatment regimen must consider the condition being treated. *Revels*, 874 F.3d at 667. Here, the ALJ previously discussed in the opinion Plaintiff's routine and conservative treatment. Tr. 22-23. While surgery was recommended for Plaintiff's lumbar condition once he reached a later age, Tr. 658, 671, the ALJ's finding that the record reflected that Plaintiff's functional limitations were not as extreme as Dr. Harding opined given that

ORDER - 16

Plaintiff's back and leg pain improved with routine and conservative treatment is a rational interpretation of the record.   Tr. 24 (citing Tr. 706, 767-77).  This was a legitimate and specific reason, supported by substantial evidence, to discount Dr. Harding's opinions.  Moreover, any error by the ALJ in relying on Plaintiff's improvement with routine and conservative treatment as a basis to discount Dr. Harding's opinions is harmless because the ALJ provided other specific and legitimate reasons, supported by substantial evidence, *see supra*, to discount Dr. Harding's opinions.  *See Molina,* 674 F.3d at 1115.

Finally, the ALJ found Dr. Harding's opinions inconsistent with Plaintiff's daily activities.  Tr. 24.  An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 541, 601-02 (9th Cir. 1999).  Here, the ALJ cited Plaintiff's Function Report in which Plaintiff stated that he did not have difficulty dressing, shaving, eating, using the bathroom, or caring for his hair, and that he fed and watered his dog; prepared sandwiches and frozen dinners; occasionally did dishes; and sometimes went shopping.  Tr. 24 (citing Tr. 243-45).  On this record, the nature and quality of the activities cited by the ALJ as inconsistent with Dr. Harding's opinions do not constitute a legitimate reason to discount Dr. Harding's opinions.  Yet, any error by the ALJ in relying on Plaintiff's daily activities as a basis to discount Dr. Harding's opinions is harmless because the ALJ provided

other specific and legitimate reasons, supported by substantial evidence, *see supra*, to discount Dr. Harding's opinion.  *See Molina,* 674 F.3d at 1115.

**B. Plaintiff's Symptom Claims**

Plaintiff contends the ALJ failed to rely on clear and convincing reasons in discrediting his statements about the intensity, persistence, and other limiting effects of his symptoms.  ECF No. 16 at 15-18

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient.  The ALJ must identify what symptom

claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester,* 81 F.3d at 834). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or taken to alleviate pain or other symptoms; 5) treatment, other than medication, the claimant receives or received for relief of pain or other symptoms; 6) any measures other than treatment the claimant uses or used to relieve pain or other symptoms; and 7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p; 20 C.F.R. § 416.929(c)(1)-(3). The ALJ is instructed to "consider all of the evidence in an individual's record" "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p.

While the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms,

the ALJ discounted Plaintiff's claims concerning the intensity, persistence, and limiting effects of the symptoms.  Tr. 21.

### 1. Inconsistent with the Objective Medical Evidence

The ALJ found Plaintiff's reported symptoms of chronic, incapacitating back and leg pain and difficulty walking as inconsistent with the objective findings, including imaging and examination findings.  Tr. 21-22.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by the objective medical evidence.  *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  Here, the ALJ highlighted the 2014 MRI, 2015 MRI, and July 2015 CT lumbar spine. Tr. 389, 399, 411, 710-12.  The ALJ noted that during examinations Plaintiff regularly exhibited normal/near normal range of motion, strength of the lumbar spine and lower extremities, sensation, and tendon reflexes.  Tr. 22 (citing Tr. 394, 517, 614, 639, 649, 658; 693, 695, 697, 699, 724, 745, 758, 760, 762, 764, 766-67).  In addition, the ALJ noted that Plaintiff often had negative straight leg raises.  Tr. 22 (citing Tr. 517, 547, 614).  Moreover, the ALJ

highlighted that Plaintiff's physician restricted him from using a cane so that

Plaintiff would not become dependent on it. Tr. 22 (citing Tr. 270). While

Plaintiff's symptoms naturally waxed and waned, the ALJ's finding that the

relatively benign objective findings and the imaging were out of proportion with

and did not corroborate Plaintiff's report of severe restrictions with lifting,

standing, walking, sitting, and bending is reasonable. This was a clear and

convincing reason to discount Plaintiff's symptom reports.

    *2. Inconsistent Statements*

       The ALJ also found Plaintiff's allegations of disabling pain inconsistent with

his statements to his treatment providers. Tr. 22. In evaluating a claimant's

symptom claims, an ALJ may consider the consistency of an individual's own

statements made in connection with the disability-review process with any other

existing statements or conduct. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.

1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such

as reputation for lying, prior inconsistent statements concerning symptoms, and

other testimony that "appears less than candid."); *Thomas*, 278 F.3d at 958-59.

Here, the ALJ highlighted that Plaintiff denied any leg pain in February 2015, Tr.

579; reported he slept well in February 2016 if he consumed marijuana at night, Tr.

671; reported that medication decreased his shooting pain in March 2016, Tr. 681;

reported feeling better and rated his pain level at 6 out of 10 in December 2016, Tr.

705, and denied sleep disturbances, dizziness, balance problems, weakness, numbness, tingling, joint pain, joint stiffness, joint swelling, muscle aches, muscle cramping, and muscle weakness in December 2016, Tr. 725. Tr. 22. The ALJ found Plaintiff's statements to his medical providers about the severity and limiting effects of his symptoms inconsistent with his symptom reports during the administrative process, which included: an inability to work due to lumbar disc disease, which caused significant low back pain, loss of reflex in his bilateral feet, and difficulty standing, walking, bending, lifting, pushing, pulling, reaching, sitting, and sleeping, along with a need to only stand or sit for an hour at time before changing positions and to lie down up to four times a day for up to an hour each time. Tr. 254, 241, 242, 258-59, 264, 411. While the record reflects that Plaintiff's symptoms waxed and waned, the ALJ reasonably found that Plaintiff's symptom reports to his medical providers were less severe and limiting than those reported during the administrative process. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Even if we discount some of the ALJ's observations of [the claimant's] inconsistent statements and behavior, which might have innocent explanations as [the claimant] contends, we are still left with substantial evidence to support the ALJ's credibility determination."). This was a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's symptom reports during the administrative process.

### 3. Inconsistent with Conservative Treatment

The ALJ found that Plaintiff's claims of disabling impairment were inconsistent with his treatment that was routine and conservative in nature. Tr. 22. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3), 416.929(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). The record must reflect that the severity of the condition decreased sufficiently to permit the claimant to engage in gainful activity. *Warre*, 439 F.3d at 1006. Here, the ALJ highlighted that Plaintiff's treating physician opined in 2015 that surgery might not provide reliable relief to Plaintiff's lower extremities and thus canceled his recommendation for bilateral L5-S1 surgery. Tr. 22 (citing Tr. 648). The ALJ also found that Plaintiff's conservative treatment, including aquatic therapy and physical therapy, provided good control and improvement for Plaintiff's conditions. Tr. 22 (citing Tr. 706, 767-68). The ALJ also noted that the record reflected that Plaintiff was prescribed pain medications, steroid injections, and muscle relaxants. Tr. 389-90, 411, 493-94, 583, 692, 723-24. While the ALJ accurately summarizes these aspects of the record, the ALJ did not mention that surgery was recommended to be withheld until Plaintiff was in his

thirties—though Dr. Chen was still hesitant whether the lumbar fusion would provide much relief and encouraged Plaintiff to engage in conventional treatment. Tr. 650-51. Even if the ALJ erred in discounting Plaintiff's claims of disabling impairment on the grounds that he received routine and conservative treatment, the ALJ provided other clear and convincing reasons for discounting Plaintiff's symptom claims. *See Molina,* 674 F.3d at 1115.

### 4. Inconsistent with Daily Activities

The ALJ also found that Plaintiff's daily living activities were inconsistent with his reported worsening of back, leg, and feet pain if he stood, drove, and performed housework. Tr. 23. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. In addition, if a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported inability to work. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. Here, the ALJ highlighted that Plaintiff did not have any

difficulty with his personal care, including dressing, hair care, shaving, eating, and using the bathroom, engages in light physical therapy exercises; cares for his dog; prepares simple meals; does dishes occasionally; and walks in his backyard and in stores. Tr. 23 (citing Tr. 243-45). Although the ALJ accurately summarizes the Plaintiff's reported activities, these activities, either singularly or cumulatively, are insufficient to indicate that Plaintiff's capacities are transferable to a work setting or contradict claims of a totally debilitating impairment. This was not a clear and convincing reason to discount Plaintiff's reported symptoms. Yet this error is harmless, as the ALJ's other supported reasons for discounting Plaintiff's symptom claims—that they are inconsistent with the objective medical evidence and Plaintiff offered inconsistent statements—constitute clear and convincing reasons to discount Plaintiff's symptom claims.

## C. Step Four

Plaintiff contends the Appeals Council failed to properly assess step four.[3] ECF No. 16 at 18-16; ECF No. 20. A claimant has the ability to return to his previous work if he can perform the "'actual functional demands and job duties of

_____

[3] The Appeals Council modified the ALJ's step-four ruling. Tr. 4-5. The parties filed supplemental briefing related to the Appeals Council's step-four finding. ECF Nos. 19-21.

a particular past relevant job'" or "'[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy.'" *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (quoting SSR 82-61). Here, the Appeals Council found that Plaintiff's past work at Baskins Robbins was more accurately described as a fountain server, rather than a food server. Tr. 219, 4-5. Plaintiff argues that 1) his past work should be characterized as a food server, DOT 311.677-014, and not a fountain server, DOT 319.474-010, as he had to bend over and scoop hard ice cream out of buckets; and 2) the Appeals Council failed to explain how it reached its past-work classification finding without any vocational expertise. ECF No. 20. Before issuing its final step-four decision, the Appeals Council notified Plaintiff that it was considering Plaintiff's past work to be more accurately characterized as a fountain server and invited Plaintiff to provide additional information or argument to the Appeals Council before it issued its final decision. Tr. 219. The Appeals Council did not receive a statement or additional evidence from Plaintiff. Tr. 4. Therefore, consistent with its prior notification, the Appeals Council relied on Plaintiff's testimony and the Dictionary of Occupational Titles (DOT) 319.474-010 to find that Plaintiff's past work was more accurately characterized as a fountain server. Tr. 4, 219. Plaintiff testified that his job at Baskin Robbins involved "[s]erving ice cream, taking inventory. Pretty much things of that sort." Tr. 67. DOT 319.474-010 describes

the tasks of a fountain server to include preparing and serving soft drinks and ice cream dishes and cleaning glasses, dishes, and fountain equipment. On this record, the Appeals Council's finding that Plaintiff's past work was as a fountain server and that Plaintiff is capable of performing his past relevant work as a fountain server, even if only as generally required by employers throughout the national economy and not specifically at Baskin Robbins, is reasonable and supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

2. Defendant's Motion and Supplemental Motion for Summary Judgment, **ECF Nos. 17 & 21**, are **GRANTED**.

3. The Court enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED June 25, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 27